UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JENNIFER LYNN MERRITT,

      Plaintiff,

  v.                                                18-CV-243
                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

---

On February 14, 2018, the plaintiff, Jennifer Lynn Merritt, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On December 27, 2018, Merritt moved for judgment on the pleadings, Docket Item 12; on March 27, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on April 18, 2019, Merritt replied, Docket Item 18.

For the reasons stated below, this Court grants Merritt's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On September 23, 2014, Merritt applied for Supplemental Security Income benefits. Docket Item 8 at 187. She claimed that she had been disabled since

February 13, 2008, due to bipolar disorder, panic disorder, lower back degeneration, fibromyalgia, and bilateral carpel tunnel syndrome. *Id.* at 189-90.

On January 28, 2015, Merritt received notice that her application was denied because she was not disabled under the Act. *Id.* at 194. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 224, which was held on December 27, 2016, *id.* at 146. The ALJ then issued a decision on May 17, 2017, confirming the finding that Merritt was not disabled. *Id.* at 75-87. Merritt appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

## II.    RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Merritt's objection.

### A.    Merritt's Medical Records

After being diagnosed with bipolar disorder, panic disorder, and polysubstance abuse history, Merritt began monthly psychotropic-medication-management appointments with Michael A. Cline, N.P., in 2012. Docket Item 8 at 908-17. Merritt's medication regimen included Risperdal, Vistaril, and Klonopin. *Id.*

In September 2012, Merritt reported to Nurse Cline that she had been diagnosed with fibromyalgia by her primary care provider. *Id.* at 918. She continued to attend monthly medication-management appointments through September 2013. *Id.* at 919-31. Around that same time, she saw Shahid Banday, M.D., and reported lower-back pain shooting into her legs, as well as difficulty bending and twisting. *Id.* at 491. Dr. Banday prescribed Gabapentin to treat Merritt's pain. *Id.* at 492.

2

In November 2013, Anupa Seth, M.D., a physician at the UMMC Pain Center, examined Merritt. *Id.* at 576. Dr. Seth reported that Merritt "br[oke] out into tears multiple times during the course of the interview stating that her pain is posterior [and] that she is unable to function." *Id.* at 577. Dr. Seth also noted that Merritt had significant anxiety and depression, prescribed Lyrica, and referred Merritt for aquatic therapy. *Id.* at 579.

Merritt continued to attend medication-management appointments intermittently and continued to report pain, anxiety, and depression. *Id.* at 939-96. She did, however, report some pain relief with medication. *See id.* at 874, 902 (reporting 60% to 70% pain relief with medication in April and October 2014); *id.* at 880-81, 883, 894 (reporting 40% to 50% pain relief with medication in June and August 2014).

In June 2015, a computed tomography (CT) scan of Merritt's lower spine showed an annular disc bulge at L4-L5 and L5-S1 and spinal stenosis. *Id.* at 769. Neha Lelani, M.D., assessed low back pain and prescribed Norco. *Id.* at 770.

In November 2015, Merritt entered a chemical-dependency treatment program on a referral from the Erie County Family Court. *Id.* at 1000. She stated that in December 2014, she had realized that she was addicted to opiate pain medication. *Id.* at 1002. Merritt stopped attending treatment, however, and was officially discharged from the program in March 2016. *Id.* at 1013.

**B.     Opinion Evidence**

In January 2015, a non-examining state agency review consultant, H. Ferrin ("the consultant"),[1] reviewed Merritt's records. The consultant found that Merritt had the following severe impairments: "7240 – DDD (Disorders of Back – Discogenic and Degenerative)" and "2960 – Affective Disorders." *Id.* at 200. The consultant found, however, that there was insufficient evidence to determine the severity of Merritt's psychiatric impairments or to assess her level of functioning. *Id.* at 201. The consultant noted that a "psych [consultative examination ('CE')] was requested" but Merritt "failed to attend [the] CE despite numerous app[ointments] and 3rd party involvement." *Id.* The consultant did not discuss Merritt's functional capacity with respect to her degenerative back disorder.

## III.    THE ALJ'S DECISION

In denying Merritt's application, the ALJ analyzed Merritt's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). If there is not a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If

---

[1] The record does not include H. Ferrin's full name or credentials.

there is a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether a severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that there is no severe impairment or combination of impairments that meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See id.* § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Merritt had not engaged in substantial gainful activity since February 13, 2008, the alleged onset date of her disability. Docket Item 8 at 80. At step two, the ALJ found that Merritt had the following severe impairments: degenerative disc disease, bipolar disorder, anxiety disorder, and history of polysubstance abuse. *Id.* The ALJ also noted that Merritt "has a history of pain disorder, fibromyalgia, arthritis in the wrists, carpal tunnel syndrome, and posttraumatic stress disorder." *Id.* at 81. The ALJ explained that Merritt's "back pain is addressed below as degenerative disc disease." *Id.* With respect to the remaining issues, however, the ALJ determined that "[t]here is nothing in the medical evidence of record to suggest [that Merritt's] history of pain disorder, fibromyalgia, arthritis in the wrists, carpal tunnel syndrome, and posttraumatic stress disorder would cause more than a minimal limitation on [her] ability to perform basic work activities." *Id.* The ALJ therefore concluded that "these impairments are non-severe impairments." *Id.*

At step three, the ALJ determined that Merritt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 8 at 81. At step four, the ALJ determined that, based on the entire record, Merritt has the RFC to "perform light work" with the following exceptions:

> the claimant cannot climb ladders, ropes, and scaffolds;
> must avoid concentrated exposure to extreme cold, to
> humidity, and wetness; avoid hazardous machinery,
> unprotected heights, and open flames; can do simple
> routine, repetitive tasks; must work in a low stress job,
> defined as having no fixed production quotas, no hazardous

6

>conditions, only occasional decision making required, and only occasional changes in the work setting; and occasional interact [sic] with coworkers, supervisors, and the general public.

*Id.* at 83.

Finally, based on that RFC and the testimony of a vocational expert, the ALJ found that there are a significant number of jobs in the national economy—including "mail room clerk," "office helper," and "routing clerk"—that Merritt can perform. *Id.* at 86-87.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Merritt argues that the ALJ's RFC determination was not supported by substantial evidence because—in the absence of a medical opinion—the ALJ improperly relied on his own lay judgment. Docket Item 12-1 at 21. She also objects to the ALJ's finding that her fibromyalgia and chronic pain syndrome were non-severe. *Id.* at 16. Finally, she argues that the ALJ failed to properly evaluate vocational records in determining her RFC. *Id.* at 19.

### II. ANALYSIS

In determining a plaintiff's RFC, the ALJ must evaluate every relevant medical opinion. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* (quoting 20 C.F.R. § 416.913(a)).

The ALJ may consider the opinions of "other sources"—for example, nurse practitioners or chiropractors—but there is no obligation to assign weight or give deference to those sources. *Id.* Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the

8

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. "When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source." *Keska v. Comm'r of Soc. Sec.*, 2019 WL 453362, at *4 (W.D.N.Y. Feb. 5, 2019) (citing 20 C.F.R. § 404.1527(c)(4)).

Moreover, an "ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources." *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998)). "As a general rule, where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations . . . , the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 913 (N.D.Oh. 2008)).

Here, the only opinion in the record was that of the consultant. The ALJ gave "little weight" to this opinion. Docket Item 8 at 85. Specifically, the ALJ noted that "the state agency medical consultants [sic]" found no limitations resulting from Merritt's affective disorder or degenerative disc disease, a conclusion that was "inconsistent with the objective medical evidence." *Id.*

As an initial matter, it does not appear that the consultant actually rendered an opinion on Merritt's RFC. In fact, the evaluation explicitly stated that the medical

9

records were "insufficient to determine [the] severity" of Merritt's psychiatric impairments. *Id.* at 200. A "psych CE was requested," the consultant noted, but Merritt "failed to attend [the] CE despite numerous app[ointments] and 3rd party involvement." *Id.* And although the consultant found that Merritt had severe degenerative disc disease, there was no further discussion of that impairment or what, if any, functional limitations resulted from it. *Id.* at 200. Indeed, the claim adjudicator noted that "[n]o RFC[ ] assessments are associated with this claim." *Id.* at 201. Ultimately, Merritt's claim was not addressed substantively but was "denied for [failure to comply]." *Id.* at 199.

The ALJ, on the other hand, resolved Merritt's claim substantively. But because there was no medical or psychological opinion regarding Merritt's functional capacity, the ALJ necessarily relied on his own lay judgment to evaluate the medical records. For example, the ALJ accounted for Merritt's severe degenerative disc disease "by limiting [her] to light work with the additional limitation that [she] cannot climb ladders, ropes, and scaffolds; must avoid concentrated exposure to extreme cold, humidity, and wetness; [and must] avoid hazardous machinery, unprotected heights, and open flames." *Id.* at 84-85. But no physician or other medical provider opined about such limitations. And it is not at all clear how the ALJ was able to glean from the bare medical data that such limitations would allow Merritt to perform light work notwithstanding her severe impairment of degenerative disc disease.

Similarly, the ALJ claimed to have accounted for Merritt's severe impairments of bipolar disorder, anxiety disorder, and polysubstance abuse by limiting her to "simple, routine, repetitive tasks"; "a low stress job" with "no fixed production quotas, no

10

hazardous conditions, only occasional decision making required, and only occasional changes in the work setting"; and a job that would require only "occasional interact[ion] with coworkers, supervisors, and the general public." *Id.* at 85. But again, no provider or consultant opined about any of that. And it is not apparent how the ALJ was able to determine that such limitations would address Merritt's severe mental and substance-related impairments.

Finally, the ALJ provided no explanation of how he was able to conclude—based on the medical records alone—that Merritt was not disabled when the only consultant opined that an additional CE was required to make that determination.[2]

Because the ALJ improperly substituted his own lay opinion in formulating Merritt's RFC, his decision is not supported by substantial evidence and remand is required. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018)) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the

---

[2] If, like the initial claim adjudicator, the ALJ had denied Merritt's claim based on Merritt's failure to comply, there would be a different question before this Court. *See* 42 U.S.C. § 405(g) (explaining that when a claim is denied "because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations"). But the ALJ did not do that; instead, he based his decision on the merits of the claim.

11

RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").[3]

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Merritt's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: October 30, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[3] Merritt makes two additional arguments in support of remand. First, she contends that the ALJ erred in finding that her chronic pain syndrome and fibromyalgia were not severe impairments. Docket Item 12-1 at 16. Second, she argues that the ALJ failed to properly evaluate vocational records in determining her RFC. *Id.* at 19. Because the ALJ will revisit those issues on remand, there is no need for the Court to reach them here. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 248 (W.D.N.Y. 2019).